IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| AMANDA L. GAYHART,<br><br>    Plaintiff,<br><br>    v.<br><br>NORTHAMPTON RESTAURANTS, INC., d/b/a ABERDEEN BARN STEAKHOUSE,<br><br>    Defendant. | Case No. 2:24-cv-488 |

**OPINION & ORDER**

In this Fair Labor Standards Act case, Plaintiff Amanda Gayhart seeks to recover damages from her former employer, Northampton Restaurants Inc. The parties reached a settlement agreement and submitted a Joint Motion to Approve FLSA Settlement. ECF No. 10.[1] For the reasons stated herein, the motion is **GRANTED**.

**I.     BACKGROUND**

The plaintiff is a former restaurant server at Aberdeen Barn Steakhouse ("ABS") in Virginia Beach, Virginia. ECF No. 2 ¶¶ 10, 17. Defendant Northampton Restaurant, Inc. ("NRI") does business as ABS. *Id.* ¶ 2. NRI paid the plaintiff $2.13 per hour and relied on the plaintiff's tips to satisfy the minimum wage requirements.

---

[1] The Court has considered the arguments in the parties' briefing and concluded there is no need to hold a hearing on the motion. *See* Fed. R. Civ. P. 78(b); E.D. Va. Civ. R. 7(J).

*Id.* ¶¶ 18–19. According to the plaintiff, NRI withheld a certain amount of her tips each day, purportedly to distribute to other employees as a part of a tip pool. *Id.* ¶ 21. The plaintiff was required to contribute a percentage of her tips to NRI for a tip pool and to pay a portion of her tips to the cooks and bartenders. *Id.* ¶¶ 36, 27, 28. Her pay was further reduced for customer walkouts and credit card processing fees. *Id.* ¶¶ 23–25, 26. NRI failed to redistribute tips through the tip pool system and kept a significant portion of the plaintiff's tips. *Id.* ¶¶ 31, 33.

As a result, the plaintiff, represented by Attorney Christian Connell, filed this action seeking unpaid wages pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201. ECF No. 1. The plaintiff requested $20,000 in unpaid wages and tips, pre- and post-judgment interest, liquidated damages, litigations costs, and attorneys' fees. *Id.* at 13–14.

This case is nearly identical to *Carroll v. Northampton Restaurants, Inc.*, No. 2:21-cv-115, 2024 WL 1223442 (E.D. Va. Mar. 21, 2024). ECF No. 11 at 2. The class of plaintiffs in *Carroll* was defined as "all persons who currently work or formerly worked at" ABS as "waiters or waitresses from September 2018 through June 2021." 2024 WL 1223442, at *1.[2] On March 21, 2024, the Court approved the *Carroll* parties' settlement agreement, including an incentive award of $9,000 for the lead plaintiff and a settlement fund in the gross amount of $160,000. *Id.* at 15. Additionally, the

---

[2] The plaintiff was not a part of the prior suit because her earnings history was missing. ECF No. 11 at 2–3. Defense counsel voluntarily provided it here before NRI had even answered the Amended Complaint. *Id.*

2

Court granted a motion for attorney's fees with modifications, awarding $294,974.61 in attorney's fees and $10,993.72 in costs, to be paid by NRI. *Id.*

In *Carroll*, the parties "engaged in extensive discovery lasting approximately two years." ECF No. 11 at 2. Because of the extensive discovery in *Carroll*, most of the discovery for this case had already been completed. *Id.* Thus, the parties were able to reach "a mutually acceptable resolution of their dispute early in the litigation." *Id.* at 3.

In the instant motion for settlement approval, the plaintiff seeks $18,000 total, with $10,400 to be paid to the plaintiff for unpaid wages and liquidated damages and $7,600 to be paid to Attorney Connell. ECF No. 11 at 4. NRI agrees to the request.

## II.   LEGAL STANDARDS

### A.   FLSA Settlement Approval

"All FLSA settlements must be approved either by the United States Department of Labor or the district court." *Gholston v. Smithfield Foods, Inc.*, No. 2:21-cv-194, 2022 WL 21842305, at *2 (E.D. Va. Nov. 2, 2022) (citation and quotation marks omitted). "Such approval is required for both class actions and individual cases." *Baust v. City of Virginia Beach*, 574 F. Supp. 3d 358, 363 (E.D. Va. 2021) (punctuation and citation omitted). A court should approve a settlement when it is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Minsterman v. S.L. Nusbaum Realty Corp.*, No. 2:10-cv-303, 2011 WL 9687817, at *1 (E.D. Va. Jan. 21, 2011) (quoting *Lynn's Food Stores, Inc. v. U.S. By and Through*

3

*U.S. Dep't of Labor, Emp. Standards Admin. Wage, and Hour Div.*, 679 F.2d 1350, 1355 (11th Cir. 1982)).

"[T]here is a strong presumption in favor of finding a settlement fair." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08-cv-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) (quotation marks and citation omitted). To determine whether a settlement agreement is fair and reasonable, courts in this district consider several factors, including:

> (1) The extent of discovery that has taken place;
>
> (2) The stage of the proceedings, including the complexity, expense, and likely duration of the litigation;
>
> (3) The absence of fraud or collusion in the settlement;
>
> (4) The experience of counsel who has represented the plaintiffs;
>
> (5) The probability of [the] plaintiffs' success on the merits; and
>
> (6) The amount of the settlement in relation to the potential recovery.

*Gholston*, 2022 WL 21842305, at *2 (citation omitted); *Baust*, 574 F. Supp. 3d at 363; *Davis v. BT Ams. Inc.*, No. 2:16-cv-206, 2017 WL 11506967, at *2 (E.D. Va. May 10, 2017); *Lomascolo*, 2009 WL 3094955, at *10.

### B. Attorney's Fees

The FLSA contains a fee-shifting provision that allows courts to award "a reasonable attorney's fee to be paid by the defendant" along with "costs of the action." 29 U.S.C. § 216(b). "[T]he FLSA requires judicial review of the reasonableness of

4

counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Gholston*, 2022 WL 21842305, at *2 (quotation marks and citations omitted).

Courts typically evaluate the reasonableness of attorneys' fees by comparing the requested amount to a lodestar amount, which is a "reasonable hourly rate multiplied by hours reasonably expended."[3] *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). When determining the reasonableness of the fees, the Fourth Circuit has instructed district courts to consider the following 12 factors ("the *Johnson* factors"), though it "need not consider all twelve *Johnson* factors, only those relevant to the particular litigation." *Baust v. City of Virginia Beach*, 574 F. Supp. 3d 358, 364 (citations omitted):

    (1)    The time and labor required in the case;

    (2)    The novelty and difficulty of the questions presented;

    (3)    The skill required to perform the necessary legal services;

---

[3] In common fund cases, courts in the Fourth Circuit prefer the percentage-of-the-fund or percentage-of-recovery method when determining attorneys' fees. *See Galloway v. Williams*, 2020 WL 7482191, at *5 (E.D. Va. Dec. 18, 2020) ("[T]he favored method for calculating attorneys' fees in common fund cases is the percentage[-]of[-]the[-]fund method.") (citation omitted); *Hatzey v. Divurgent, LLC*, 2018 WL 5624300, at *4 (E.D. Va. Oct. 9, 2018) (citing *Savani v. URS Pro. Sols. LLC*, 121 F. Supp. 3d 564, 568 (D.S.C. 2015) ("Within this Circuit, the percentage-of-recovery approach is not only permitted[ ] but is the preferred approach to determine attorney's fees.")). However, this is not a common fund case. Thus, this Court will only engage with the lodestar principle calculation.

 (4) The attorney's opportunity costs in pressing the instant litigation;

 (5) The customary fee for similar work;

 (6) The contingency of a fee;

 (7) The time limitations imposed by the client or circumstances;

 (8) The amount in controversy and the results obtained;

 (9) The experience, reputation and ability of the attorney;

 (10) The undesirability of the case within the legal community in which the suit arose;

 (11) The nature and length of the professional relationship between attorney and client; and

 (12) Attorneys' fees awards in similar cases.

*See In re Abrams & Abrams, P.A.*, 605 F.3d 238, 244 (4th Cir. 2010) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974); *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978); *Allen v. U.S.*, 606 F.2d 432, 436 n.1 (4th Cir. 1979)).

## III. ANALYSIS

### A. Approval of the FLSA Collective Action Settlement

#### i. *Bona fide dispute*

The Court must first determine if the parties had a bona fide dispute over FLSA provisions. *Minsterman*, 2011 WL 9687817, at *1 (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1353).

Here, the parties disputed whether the plaintiff was entitled to damages under the FLSA. ECF No. 2 ¶ 33 (alleging that NRI violated 29 U.S.C. § 203(m)(2)(B) when it kept "a significant portion of [the plaintiff's] tips and/or improperly us[ed] them for other purposes without notifying her."); ECF No. 6 ¶ 33 (denying the allegation). They also contested the amount of unpaid wages and liquidated damages that the plaintiff was entitled to. ECF No. 11 at 5 (agreeing that there was a "bona fide dispute regarding the amount of unpaid wages and liquidated damages to which [the plaintiff] is entitled."). 29 U.S.C. § 216 governs the penalties for violating the FLSA, including the payment of unpaid wages and liquidated damages in equal amounts. The parties' settlement agreement provides a settlement sum for the plaintiff to receive compensation for both her unpaid wages and liquidated damages and for her counsel to receive attorney's fees. ECF No. 10-1 ¶ 2. Therefore, this settlement resolves a bona fide dispute over FLSA provisions.

### ii. *Reasonableness and Fairness*

#### a. *The Extent of the Discovery*

First, the Court considers whether the parties had adequate time to conduct sufficient discovery. The parties did not conduct significant discovery in this case but instead relied on discovery completed in *Carroll*, in which Attorney Connell represented 52 servers asserting the same claims against NRI. *See* 2024 WL 1223442; ECF No. 11 at 6. In that case, the parties "retained experts, conducted 'roughly' 12 depositions, exchanged interrogatories, requests for production, subpoenas, and tip policy logs—which provided servers' daily sales, and tips that the servers 'w[ere]

7

required to pay to the restaurant.'" *Carroll*, 2024 WL 1223442, at *4. There, "[t]he plaintiffs had adequate time to collect and review all the information obtained in discovery," and the parties "completed 'all discovery' when they reached an agreement." *Id.* Here, relying on that discovery, the plaintiff represents that "sufficient evidence had been collected and analyzed to ensure that [the plaintiff] is receiving fair and reasonable consideration for the release of the claims asserted in this case." Thus, this factor weighs in favor of settlement approval.

### b. *The Stage of Proceedings*

Second, the Court looks to the stage of the proceedings, including the complexity, expense, and likely duration of the litigation. This factor generally weighs in favor of approving the proposed settlement, because discovery was completed through a prior case with identical facts. *See Carroll*, 2024 WL 1223442, at *4; *see also In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009) ("Where[] . . . at the time of these settlements . . . [] discovery was largely completed as to all issues and parties, the second factor militates toward approval of settlement.") (quotation marks omitted and alterations accepted). Incorporating the discovery from *Carroll*, the only discovery left to complete was the deposition of the plaintiff and the deposition of the primary person in charge of running ABS. ECF No. 11 at 6. All liability issues and disputes about the accuracy of the plaintiff's time records were litigated in *Carroll*, so there was little dispute about damages in this case. *Id.* Given that potential damages were known with relative certainty in this case before the parties formed the settlement agreement, and discovery was largely completed as to

8

all issues, the Court finds that the stage of the proceedings weighs in favor of settlement approval.

### c.     *Absence of Fraud or Collusion*

Third, the Court considers the absence of fraud or collusion in the settlement. The parties represent that this settlement was achieved through good-faith, arms-length negotiations with "no possibility of fraud or collusion." ECF No. 11 at 7. Looking beyond the parties' own representations, the Court finds no evidence of fraud or collusion in the record. *See Lomascolo*, 2009 WL 3094955, at *12 ("There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary.") (citation omitted). It is clear that both parties defended this action vigorously. Accordingly, the Court finds that the absence of fraud or collusion further weighs in favor of settlement approval.

### d.     *Experience of Plaintiff's Counsel*

Fourth, the Court reviews the experience of counsel who represented the plaintiff. Attorney Connell, who served as lead counsel in *Carroll*, is also Plaintiff Gayhart's attorney. 2024 WL 1223442. As the Court recognized in *Carroll*, "Attorney Connell began his solo practice in 2000" and "is highly experienced in FLSA matters." *Id.* at *4 (internal citations omitted). He also served as counsel in at least 15 "wage and hour litigation" cases, including several FLSA actions, and his practice focuses on "complex, multi-plaintiff wage and hour litigation" claims. ECF No. 11 at 7. Upon review of counsel's credentials, the Court finds that Attorney Connell possesses the breadth of relevant experience and knowledge needed to litigate and resolve this

9

matter in the best interest of the plaintiff. Thus, this factor weighs in favor of approving the proposed settlement.

### e. *Probability of the Plaintiff's Success*

Fifth, the Court analyzes the probability of the plaintiff's success on the merits and whether the settlement agreement is inadequate "in light of the strength" of her claims. *Flinn*, 528 F.2d at 1172. This factor weighs in favor of approving the proposed settlement when the plaintiff's success appears uncertain or minimal. *See Lafleur*, 189 F. Supp. 3d at 595. The defendant raised significant disputes and complex issues in *Carroll*. 2024 WL 1223442. Here, NRI asserts six "affirmative defenses" against the plaintiff: (1) "[t]he Amended Complaint fails to state a claim upon which relief may be granted," (2) "[t]he claims alleged in the Amended Complaint are barred by the statute of limitations," (3) "[the] [p]laintiff has failed to mitigate her damages," (4) the "claims in the Amended Complaint are barred, in whole or in part, by the doctrine of *de minimis non curat lex*," (5) "[t]he claims alleged in the Amended Complaint are barred, in whole or in part, because [ABS] is permitted to deduct the cost of converting credit card revenue into cash in accordance with the FLSA by deducting amounts from credit card tips to cover credit card fees without invalidating or surrendering the claimed tip credit," and (6) NRI "never willfully violated the FLSA, and thus, [the] [p]laintiff is not entitled to statutory penalties or any other damages that are punitive in nature, and a two-year statute of limitations must be applied with respect to the claims brought under the FLSA." ECF No. 6 at 16–17. If the plaintiff lost on any of these grounds, she may not have recovered any damages.

Instead, per the settlement agreement, the plaintiff "is recovering roughly 50% of her [maximum] damages claim."[4] ECF No. 11 at 9.

In light of these potential defenses and the risk to the plaintiff's claims, the plaintiff's success was uncertain. Indeed, the plaintiff agrees that she "could have achieved less success" if she chose to proceed to trial. ECF No. 11 at 9. As a result, this factor weighs in favor of approving the proposed settlement.

####        f.        The Amount of the Settlement in Relation to Potential Recovery

Finally, the Court considers the amount of the settlement in relation to the potential recovery. The settlement agreement provides that the plaintiff will receive $10,400 for her unpaid wages and liquidated damages in two payments: $5,200 treated as W-2 wages and $5,200 treated as Form 1099 income. ECF Nos. 10-1 at 1, 11 at 3. The plaintiff estimates her potential FLSA recovery to be $21,216 for a three-year damages claim. ECF No. 11 at 3. Based on her calculations, the settlement amount represents roughly 100% of the plaintiff's potential recovery under a three-year damages claim for unpaid wages and 50% of her maximum potential recovery if she were to recover liquidated damages. *Id.* Given the litigation risks associated with proceeding further, as discussed in Part III.A.ii.e, above, these amounts "reflect[ ] a reasonable compromise over the remaining issues actually in

---

[4] The plaintiff sought a judgment against NRI for all unpaid wages and tips, "including up to $20,000." ECF No. 2 at 13–14. This number involves the "third year" of damages under the FLSA. 29 U.S.C. § 255(a) (providing a two-year limitations period for most unpaid wages claims but allowing a third year to file a claim based on "a willful violation"). The plaintiff's calculations included a willful violation of the FLSA and, accordingly, represent that maximum amount of recovery.

dispute." *Lomascolo*, 2009 WL 3094955, at *8. Thus, this factor weighs in favor of approving the proposed settlement.

Because all six factors weigh in favor of approval, the Court approves the proposed $18,000.00 settlement.

**B.     Attorney's Fees**

***i.      Lodestar Amount***

The Settlement Agreement provides for attorney's fees in the amount of $7,600. ECF No. 11 at 8; ECF No. 10-1 at 1. NRI does not object to counsel's request for attorney's fees or expenses. ECF No. 11 at 8. The parties' agreement is owed some deference; however, the Court must ensure that the negotiated sum is fair and reasonable. *See Gholston v. Smithfield Foods, Inc.*, No. 2:21-cv-194, 2022 WL 21842305 (E.D. Va. Nov. 2, 2022), at *2 ("[T]he FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.") (quotation marks and citations omitted).

*a.     Reasonable Rate*

1.     *Attorney Rates*

The parties agree that counsel's rate of $475 per hour for attorney work is reasonable. ECF No. 11 at 7, 8. And courts in this district have approved higher rates for experienced counsel in similar matters. *Gholston* 2022 WL 21842305, at *6. (finding an hourly rate of $500 "reasonable . . . especially" when counsel was "experienced in FLSA" actions) (citing *LaFleur*, 189 F. Supp. 3d at 597–98 (approving

12

reduced hourly rates that ranged from $75 to $475)); *Carr v. Rest Inn, Inc.*, No. 2:14-cv-609, 2015 WL 5177600, at *4 (E.D. Va. Sept. 3, 2015) (finding that $500 per hour was "reasonable" rate for an "experienced . . . FLSA attorney").

Further, the relevant *Johnson* factors—such as the skill and reputation of the attorneys and the contingent basis of the fee—also support the reasonableness of counsel's rates. *See In re Abrams & Abrams, P.A.*, 605 F.3d at 246. Upon consideration of these factors and the parties' agreement, the Court finds that counsel's hourly rate of $475 is reasonable.

### 2. *Paralegal Rate*

In *Carroll*, Attorney Connell represented that he does not have a paralegal, so at times he performs paralegal tasks. 2024 WL 1223442, at *6. When he performed such tasks, including creating a damages spreadsheet, he billed at a paralegal rate of $150. ECF No. 11 at 7. Because the parties agree to an amount less than Attorney Connell billed, the Court assumes without deciding that the paralegal rate is reasonable.

### b. *Reasonable Hours*

The parties agree that the amount of time plaintiff's counsel billed is reasonable. ECF No. 11 at 7. Attorney Connell billed 21 hours in total. *Id.* The parties state that this does not include 1.2 hours of paralegal time; however, the hours submitted show that it must. *Id* (including 1.2 hours in table reflecting total hours). Thus, based on the information provided in the motion, the Court concludes that

Attorney Connell billed 19.8 hours of attorney work and 1.2 hours of paralegal work.[5] Despite the total number of hours worked, the parties agreed to attorney's fees of $7,200 ($7,600 minus the $405 filing fee), which represents 15.2 hours of work.[6]

Analyzing the time and labor expended, Attorney Connell's hours are well documented, directly related to the litigation, and reasonable. Counsel's invoices include individual, separate entries for each task, with clear descriptions. Attorney Connell works as a solo practitioner and is highly experienced in FLSA matters. *Carroll*, 2024 WL 1223442, at *4. He was the only attorney on this case and generally billed for tasks such as drafting communications, conducting legal research, and reviewing filings. ECF No. 11 at 7. Attorney Connell billed one entry of paralegal work ("Creating Damages Spreadsheet") at $150 per hour. *Id.* Having reviewed Attorney Connell's billing entries, the Court finds his time was spent reasonably. Accordingly, the Court approves Attorney Connell's billing of 19.8 hours at a rate of $475 per hour and 1.2 hours at a paralegal rate of $150 per hour.

      c.    *Lodestar Summary*

Upon due consideration of the record, the relevant *Johnson* factors, and the absence of objections from NRI, the Court finds that the rate and hours above are

---

[5] This miscalculation of hours affects the lodestar figure calculation. The parties state that the lodestar figure is $9,975 based on "multiplying 21 hours times an hourly rate of $475." ECF No. 11 at 8. However, the correct computation, per the entries submitted, requires multiplying 19.8 hours times an hourly rate of $475 and 1.2 hours times an hourly rate of $100, then adding the two together. In total, this equals $9,585.

[6] The parties do not explain the reason for this reduction, but they nevertheless agreed to the specific award requested here.

14

reasonable. However, the Court must adjust the parties' proposed lodestar figure to account for the correct number of attorney hours. As a result, the lodestar amount is $9,585.

### ii. Unsuccessful Claims

Next, the Court will subtract any unsuccessful claims to the extent that they do not relate to the successful ones. *See Hensley*, 461 U.S. at 440. The plaintiff brought one claim against NRI for unpaid wages pursuant to the FLSA. ECF No. 2 ¶¶ 61–68. The settlement addresses this claim. Thus, because the plaintiff was successful on her sole claim as resolved by the settlement agreement, the Court makes no adjustment to the lodestar figure at this stage of analysis and moves on to considering the plaintiff's degree of overall success.

### iii. Degree of Success

The plaintiff's degree of success is the "most critical factor" when assessing the "reasonableness of a fee award." *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006) (quotation marks and citation omitted). There is no "precise formula" for this analysis. *Hensley*, 461 U.S. at 436. At bottom, courts "*must* compare the amount of damages sought to the amount awarded." *Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005) (citation omitted and emphasis added). However, attorneys' fees need not be proportionate to the amount of damages sought. *Randolph v. PowerComm Constr., Inc.*, 780 F. App'x 16, 23 (4th Cir. 2019) (unpublished) ("A difference between damages sought and recovered does not *automatically* require reduction.") (citation omitted). Accordingly, the Court will not reduce or apportion the fee award based

solely on the difference between the damages the plaintiff sought and the damages she recovered through the settlement. The Court will consider the "*overall* degree of success in light of the litigation as a whole." *Id.* at 23 (citing *Hensley*, 461 U.S. at 440).

The plaintiff believed her damages were worth $21,216.00. ECF No. 11 at 3; ECF No. 2 at 13–14 (requesting "compensation for all unpaid wages and tips that [NRI] failed to pay in violation of the FLSA, including up to $20,000 in unpaid wages"). The actual $18,000 settlement represents roughly 84% of the plaintiff's estimate. *Id.* at 8. The plaintiff will receive $10,400 of that, after attorney's fees of $7,600, representing 50% of the plaintiff's maximum three-year damages. *Id.* at 3. The plaintiff successfully recovered both unpaid wages and liquidated damages. The parties agree that this settlement "represents an excellent outcome for [the plaintiff]." *Id.* at 4. The Court finds that the plaintiff was largely successful in recovering under her claim. For this reason, no reduction is warranted.

   *iv. Award Summary*

The parties' proposed attorneys' fees of $7,600, including the $405 filing fee, are well below the minimally adjusted lodestar figure above.[7] Thus, for all the reasons outlined above, the Court finds the fee award appropriate and reasonable.

---

[7] Included in the proposed attorneys' fees, counsel requests $405 for a filing fee. ECF No. 11 at 8. NRI does not oppose this request. This cost is directly related to the case, and no other costs are requested. Having found that counsel's uncontested request is reasonable and complies with this District's Local Rules, the Court will award $405 in costs.

16

## IV. CONCLUSION

For the reasons stated herein, the Joint Motion to Approve FLSA Settlement (ECF No. 11) is **GRANTED**.

Plaintiff Amanda Gayhart's award of $10,400 in unpaid wages and liquidated damages is **APPROVED**.

Counsel Christian Connell shall be **AWARDED** $7,600 in attorney's fees and costs to be paid by Defendant Northampton Restaurants, Inc.

The case is hereby **CLOSED**, except the Court **RETAINS** jurisdiction to enforce the settlement agreement.

**IT IS SO ORDERED.**

/s/ Jamar K. Walker
United States District Judge

Norfolk, Virginia
March 19, 2025